## FUNK *v.* WHITELY.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; MEANING OF ISSUE, HOW DETERMINED.

1. Where a mowing machine was constructed and practically operated under usual conditions, and, although crude, found to be satisfactory and successful in its operation, it was *held* to be a reduction to practice, although the machine was afterwards dismantled and some of its parts used in building other machines which differed in some respects from the old one.

2. While the destruction or dismantling of a first construction, and the loss of some of its parts or their use in making other machines, are sometimes important in determining the question of reduction to practice, they are only important when depending upon other circumstances tending to cast doubt upon claims of the earlier reduction, notably that of long and unreasonable delay in the exploitation of the invention. (Following *Esty* v. *Newton,* 14 App. D. C. 50; *Traver* v.

*Brown,* 14 App. D. C. 34; *Quist* v. *Ostrom,* 23 App. D. C. 69; *Paul* v.
*Hess,* 24 App. D. C. 462.)

3. Where an applicant adopts a claim of a patent for the purpose of pro-
curing an interference, the meaning of the issue is to be determined by
the specification of that patent. (Following *Tracy* v. *Leslie,* 14 App.
D. C. 126; and *Ruete* v. *Elwell,* 15 App. D. C. 21.)

No. 287.  Patent Appeals.  Submitted March 16, 1905.  Decided April 4,
1905.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Frank T. Brown* and *Mr. Samuel E. Darby* for the ap-
pellants.

The appellee, Mr. William N. Whitely, appeared in proper
person.

Mr. Chief Justice SHEPARD delivered the opinion of the
Court:

This is an interference proceeding between opposing claim-
ants of the invention of an improvement in clover-bunchers.

The issue is: "In a mowing-machine, in combination, a
slatted platform attached to the finger-bar and adapted to slide
on the stubble, a rake located rearward of and entirely free from .
said platform to collect and hold the crop as the machine moves
forward, supporting and operating means for said rake located
wholly upon the stubbleward side of said platform."

William N. Whitely's application was filed January 16,
1903, and patent thereon was issued June 16, 1903.  When this
patent was issued the application of Alfred C. Funk and Charles
E. Mickle was pending, having been filed February 28, 1903.

The seventh claim of Whitely's patent, having been adopted
by Funk and Mickle, was made the issue of the interference
thereafter declared.

All of the tribunals of the Patent Office have concurred in awarding priority to Whitely, and from the final decision of the Commissioner this appeal has been prosecuted.

The evidence clearly establishes the following facts: First, conception and reduction to practice by Funk and Mickle on September 12, 1902; second, that Whitely built a machine which was tested in mowing and bunching seed-clover on the 29th and 30th days of August, 1902. About 30 acres of clover were mowed during these and other tests made shortly thereafter. The testimony of practical farmers who operated the machine shows clearly that these tests were successful and satisfactory. Two photographs of this machine taken during those tests have been completely identified, and are in evidence. The machine was a crude one, not intended for sale, but sufficient to demonstrate the practical utility of the construction as a clover-buncher. It was afterward dismantled, and parts of it used in the construction of three other machines embodying the same construction, but improving upon it in certain particulars. These were tested in turn and found to operate successfully, and were promptly followed by the application for patent. There is no foundation for the contention that the failure to preserve the first machine, and the construction of the others containing mechanical improvements, show that the first was abandoned as unsuccessful. The destruction or dismantling of a first construction, and the loss of some of its parts, or their use in making other machines, is sometimes an important and even cogent circumstance in the determination of the question whether the first had been successfully reduced to practice, or amounted to nothing more than an abandoned experiment. The importance of this, however, is dependent upon other circumstances tending to cast doubt upon the claims of the earlier reduction to practice, notably that of long and unreasonable delay in the exploitation of the invention. *Esty* v. *Newton,* 14 App. D. C. 50, 54; *Traver* v. *Brown,* 14 App. D. C. 34, 41; *Quist* v. *Ostrom,* 23 App. D. C. 69, 74; *Paul* v. *Hess,* 24 App. D. C. 462. In the case at bar the successful reduction to practice of the first machine was thoroughly established.

The contention that Whitely's first construction did not embody the invention of the issue, is that chiefly relied on by the appellant. This was fully considered and denied by each of the expert tribunals of the office. The Commissioner was clearly right in holding that as Funk and Mickle had adopted the seventh claim of Whitely's patent for the purpose of procuring an interference, the meaning of the issue is to be determined by the specifications of that patent. *Ruete* v. *Elwell,* 15 App. D. C. 21, 25; *Tracy* v. *Leslie,* 14 App. D. C. 126, 135; *Latham* v. *Force,* C. D. 1898, 32, 82 Off. Gaz. 1690; *Feder* v. *Poyet,* 89 Off. Gaz. 1343.

The contention rests on the words of the claim that the rake is "entirely free" from the platform.

After quoting certain specifications from Whitely's patented application, the Commissioner said: "It is entirely clear that what claim 7 of the patent means when it says 'entirely free,' is that the rake is free to rise and fall independently of the platform, and that the platform is free to rise and fall to adjust itself to the irregularities of the ground independently of the rake; that is, the two parts are entirely free in action, although they may be connected to the same fixed parts of the machine."

We see no reason to question the soundness of this conclusion, and the decision of the Commissioner will therefore be affirmed. It is so ordered, and that this decision be certified to the Commissioner of Patents as required by the law.　　　*Affirmed.*